**McFARLIN & GEURTS LLP**
Timothy G. McFarlin (State Bar No. 223378)
Email: tim@mgcalaw.com
Jarrod Y. Nakano (State Bar No. 235548)
Email: jarrod@mgcalaw.com
4 Park Plaza, Suite 1025
Irvine, California 92614
Telephone: (949) 544-2640
Facsimile: (949) 336-7612

Attorneys for Debtor
MAMMOTH EQUITIES CONSTRUCTION GROUP, INC.

## UNITED STATES BANKRUPTCY COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| In RE:<br><br>MAMMOTH EQUITIES CONSTRUCTION GROUP, INC.<br><br>Debtor. | Case No. 09-BK-22080-RK<br>Judge: Hon. Robert N. Kwon<br><br>**In Chapter 7**<br><br>**SUPPLEMENTAL DECLARATION OF TIMOTHY G. MCFARLIN IN SUPPORT OF DEBTOR'S MOTION TO COMPEL TRUSTEE TO ABANDON PROPERTY**<br><br>Hearing:<br>Date: July 6, 2010<br>Time: 2:30 p.m.<br>Courtroom: 5D |

I, Timothy G. McFarlin state and declare as follows:

1.     I am a partner with McFarlin & Geurts LLP, counsel of record for Debtor MAMMOTH EQUITIES CONSTRUCTION GROUP, INC. ("Debtor" or "Mammoth"), and I am the attorney responsible for the day-to-day handling of this file. I am familiar with the facts and circumstances of this case. If called as a witness I can and will competently testify as to the matters contained herein.

2.     I offer this Declaration in support of Debtor's MOTION TO COMPEL TRUSTEE TO ABANDON PROPERTY ("Motion").

-1-

3.      On or around September 10, 2009, The Riverside Superior Court entered an Abstract of Judgment filed by JT-JEFFESON, LLC ("Jefferson") as against Mammoth in the amount of two hundred sixty seven thousand six hundred forty dollars and fifteen cents ($267,640.15). A true and correct copy of the September 10, 2009 Abstract of Judgment is attached and incorporated hereto as Exhibit A.

4.      On or around November 3, 2009, Mammoth filed a voluntary petition for relief under Chapter 7. On the petition for relief, Mammoth listed Jefferson as a creditor.

5.      On or around January 21, 2010, I received a letter from Liberty Surplus Insurance Corporation ("LSIC") regarding the Debtor's Insurance Policy. Therein, LSIC informed Mammoth that LSIC would agree to pay $129,619.57 to Jefferson. A true and correct copy of the January 21, 2010 letter is attached and incorporated hereto as Exhibit B.

6.      On or around February 9, 2010, I sent an email to the office of Jeffery I. Golden to inquire if the Chapter 7 trustee would stipulate to abandon the Property. Counsel for the Debtor was informed that Jeffery I. Golden would not oppose a motion to compel.

7.      It is the intent of Mammoth's Motion to remit to Jefferson the disbursement from the LSIC Insurance Policy.


Execute this 25th day of June, 2010 at Irvine, California.


        I, declare under penalty of perjury under the laws of the United States that the foregoing is true and correct, except as to those matters stated on information and belief, and, as to those matters, I am informed and believe them to be true.


_____
Timothy G. McFarlin

- 2 -

# EXHIBIT A

ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, address, State Bar number, and telephone number):*

Recording requested by and return to:

Richard J. Annen, Esq.  (SBN 91956)
Todd R. Gabriel, Esq.  (SBN 119750)
SPARBER RUDOLPH ANNEN
701 B Street, Suite 1400
San Diego, CA 92101
(619) 239-3600

[X] ATTORNEY FOR  [X] JUDGMENT CREDITOR  [ ] ASSIGNEE OF RECORD

SUPERIOR COURT OF CALIFORNIA, COUNTY OF Riverside
STREET ADDRESS: 4050 Main Street
MAILING ADDRESS: 4050 Main Street
CITY AND ZIP CODE: Riverside, CA 92501
BRANCH NAME: Riverside Hall of Justice

*FOR RECORDER'S USE ONLY*

PLAINTIFF: MAMMOTH EQUITIES CONSTRUCTION GROUP, INC.

DEFENDANT: JT-Jefferson, LLC

CASE NUMBER:
RIC 454024

**ABSTRACT OF JUDGMENT—CIVIL AND SMALL CLAIMS**  [ ] Amended

*FOR COURT USE ONLY*

1. The [X] judgment creditor  [ ] assignee of record
   applies for an abstract of judgment and represents the following:
   a. Judgment debtor's
      Name and last known address

   Mammoth Equities Construction Group, Inc.,
   a California corporation
   29222 Rancho Viejo Rd., Suite 203
   San Juan Capistrano, CA 92675

   b. Driver's license no. [last 4 digits] and state:  [X] Unknown
   c. Social security no. [last 4 digits]: Corp. No. C2283841  [ ] Unknown
   d. Summons or notice of entry of sister-state judgment was personally served or
      mailed to *(name and address):* Mammoth Equities Construction Group, Inc.,
      29222 Rancho Viejo Rd., Suite 203, San Juan Capistrano, CA 92675; and
      Benjamin R. Trachtman, Esq., 27401 Los Altos, Suite 300, Mission Viejo, CA 92691

2. [ ] Information on additional judgment debtors is shown on page 2.
3. Judgment creditor *(name and address):*
   JT-Jefferson, LLC
   5034 Bluff Pl., El Cajon, CA 92020

Date: September 09, 2009

Todd R. Gabriel, Esq.
(TYPE OR PRINT NAME)

4. [ ] Information on additional judgment creditors is shown on page 2.
5. [ ] Original abstract recorded in this county:
   a. Date:
   b. Instrument No.:

▶ *(SIGNATURE OF APPLICANT OR ATTORNEY)*

6. Total amount of judgment as entered or last renewed:
   $ 267,640.15
7. All judgment creditors and debtors are listed on this abstract.
8. a. Judgment entered on *(date):* August 5, 2009
   b. Renewal entered on *(date):*
9. [ ] This judgment is an installment judgment.

10. [ ] An [ ] execution lien [ ] attachment lien
    is endorsed on the judgment as follows:
    a. Amount: $ 0.00
    b. In favor of *(name and address):*

11. A stay of enforcement has
    a. [X] not been ordered by the court.
    b. [ ] been ordered by the court effective until *(date):*

12. a. [X] I certify that this is a true and correct abstract of the judgment entered in this action.
    b. [ ] A certified copy of the judgment is attached.
    Clerk, by _____, Deputy

[SEAL]

This abstract issued on *(date):*
SEP 10 2009

Form Adopted for Mandatory Use
Judicial Council of California
EJ-001 [Rev. January 1, 2008]

**ABSTRACT OF JUDGMENT—CIVIL AND SMALL CLAIMS**

Legal Solutions Plus

Page 1 of 2
Code of Civil Procedure, §§ 488.480, 674, 700.190

EXHIBIT B

**McCORMICK**
**BARSTOW LLP**
ATTORNEYS AT LAW

Patrick Fredette
patrick.fredette@mccormickbarstow.com

CINCINNATI, OH OFFICE
Scripps Center, Suite 1050
312 Walnut Street
Cincinnati, OH 45202
Telephone (513) 762-7520
Fax (513) 762-7521

January 21, 2009

**BY E-MAIL TIM@MCFARLINLAW.COM AND**
**CERTIFIED MAIL, RETURN RECEIPT REQUESTED**

Timothy G. McFarlin, Esq.
McFarlin & Geurts, LLC
4 Park Plaza
Irvine, California  92614

Re:    *Mammoth Equities Construction Group, Inc. v. JT Jefferson, Inc.*

Dear Mr. McFarlin:

As you know, this office is coverage counsel for Liberty Surplus Insurance Corporation ("LSIC") in connection with the above-referenced matter.    LSIC defended Mammoth Equities Construction Group, Inc. ("Mammoth") in connection with the above-referenced matter.

Recently, we were provided with a "Final Award" of the Arbitrator in this matter as well as information regarding attempts by JT Jefferson, Inc. ("JT Jefferson") to reduce the Final Award to a judgment.  Following receipt of the "Final Award," LSIC issued its coverage position letter via Certified Mail, Return Receipt Requested, to Ms. Erin Wish of Mammoth.  This letter was returned to our office unopened and marked "Refused."  Further, we have been advised by your office that Mammoth has filed a Petition pursuant to Chapter 7 of the Bankruptcy Code in the United States Bankruptcy Court for the Central District of California.    Based upon these developments, we are once again issuing LSIC's coverage position in connection with the above-referenced matter.  As noted below, we are also providing a copy of this letter to the Bankruptcy Trustee.

The purpose of this letter is to advise you that, after careful review of the Final Award and the information available to LSIC at this time, LSIC agrees to pay on Mammoth's behalf the amount of $129,619.57, representing the amount of attorneys' fees and costs taxed against Mammoth by the Arbitrator.  However, LSIC must respectfully disclaim a duty to indemnify Mammoth for the damages awarded in favor of JT Jefferson and against Mammoth.  The bases for LSIC's positions are set forth in full below.

Other offices of
McCORMICK, BARSTOW, SHEPPARD
WAYTE AND CARRUTH, LLP

www.mccormickbarstow.com

FRESNO, CA OFFICE
5 River Park Place East
Fresno, CA  93720-1501
P.O. Box 28912
Fresno, CA  93729-8912
Telephone (559) 433-1300
Fax (559) 433-2300

MODESTO, CA OFFICE
Centre Plaza Office Tower
1150 Ninth Street, Suite 1200
Modesto, CA  95354
Telephone (209) 524-1100
Fax (209) 524-1188

LAS VEGAS, NV OFFICE
8337 West Sunset Road, Suite 350
Las Vegas, NV  89113
Telephone (702) 949-1100
Fax (702) 949-1101

## I.    BACKGROUND

This matter involves a construction dispute.  The subject project is a commercial development known as the Murrieta Business Park located in Murrieta, California.  The owner of the business park is JT Jefferson, LLC ("JT Jefferson")  On or about March 11, 2005, JT Jefferson and Mammoth entered into a "Standard Form of Agreement Between Owner and Contractor."

**McCORMICK
BARSTOW LLP**
ATTORNEYS AT LAW

Timothy G. McFarlin, Esq.
January 21, 2009
Page 2

On April 18, 2005, Mammoth entered into a Subcontractor Agreement with Gudgers Glass ("Gudgers"). The Subcontract Agreement provided that Gudgers was to perform the following work:

> GLASS, GLAZING, and ALUMINUM STOREFRONT SYSTEM WORK COMPLETE consisting of but not necessarily limited to: submittals; samples; testing; test reports; warranties; guaranties; layout; aluminum curtain wall and storefront systems; storefront doors; all door hardware; glass; glazing; glazing accessories sealants; backer rod and caulking at exterior and interior; silencers seals, keys; stops; latch sets; sills; kick plates; meeting stiles; roller latches; weatherstrip; door bottoms; thresholds; 3/16" aluminum panels as shown. The following alternates shall apply: International OHCC in lieu of LCN-2030; Versalux glazing in lieu of Viracon; the curtain wall system for buildings 1-3 will match buildings 4-15 material specifications (1" insulated glazing still applies).

The work was commenced on or about April 15, 2005 and substantially completed on or about March 30, 2006. On July 28, 2006, Mammoth filed an Amended Mechanic's Lien for $970,252.52. On August 8, 2006, JT Jefferson's counsel acknowledged that it owed Mammoth $735,112.52, and disputed the remaining $178,805.00. On December 26, 2006, JT Jefferson and Mammoth agreed to submit the matter to arbitration.

On April 26, 2007, JT Jefferson filed a Counterclaim against Mammoth within the scope of the Arbitration. The Counterclaim contained six "Claims." Gudgers was subsequently named as a Cross-defendant to the arbitration with Mammoth bringing claims against Gudgers on four theories: (1) express indemnity; (2) equitable indemnity; (3) comparative equitable indemnity; and (4) declaratory relief. On June 3, 2009, the Arbitrator issued a "Final Award."

### A.    Mammoth's Claims

As mentioned above, Mammoth's claims centered around an assertion that it was owed an additional $178,850.00 by JT Jefferson. The Arbitrator found that Mammoth presented evidence of additional costs totaling $116,380.75, but found that Mammoth was entitled to only $67,200.75.

### B.    JT Jefferson's Claims

#### 1.    The Claims

As mentioned above, JT Jefferson's claims were set forth in a Counterclaim purporting to set forth six separate "Claims." Each of these Claims is summarized below.

Claim One was entitled "Defective Construction of Store Front System." In support of this claim, JT Jefferson asserted that "[o]ne of the construction defects that exists on the property related to the storefronts, which, as constructed, are completely unstable and dangerous." Claim One further asserts that this problem was "concealed" from JT Jefferson. Claim One concludes with an assertion of damages including: (1) cost to repair/replace; (2) disruption to tenant's business; and (3) additional insurance.

"Claim Two" of JT Jefferson's Counterclaim was entitled "Lost Discount with Arrowhead Timber Structures." In support of this Claim, JT Jefferson asserted that it "lost its discount from Arrowhead Timber Structures due to Mammoth's failure to make timely payment. JT Jefferson had to pay the full amount instead of getting a discount."

Claim Three of the Counterclaim was entitled "Improper Soil/Soil Compaction/Water Leaks/Underground Faults." In support of this Claim JT Jefferson asserted that unacceptable soil was used for the project in that it could not provide the proper compaction. This was also allegedly concealed from JT Jefferson. Mammoth also allegedly charged JT Jefferson for replacement of the unacceptable soil that it had installed on the project. Claim Three concludes with an allegation that, water leakage and poor compaction have caused underground faults. This allegedly resulted in at least one landscape area to collapse due to water and compaction problems.

Claim Four of the Counterclaim was entitled "Miscellaneous Additional Construction Defect Claims." This Claim asserts the following additional defects in the project: (1) construction of defective handicap ramps and landings; (2) defective construction of coping on parapet walls; (3) damage to storm drainage and sanitary sewer systems; (4) defective construction of underground sewer lines; and (5) defective foam application.

Claim Five was entitled "Damages for Breach of Contract for Mammoth's Failure to Required [sic] Payment and Dispute Resolution Procedure." This Claim asserts that, instead of mediating and/or arbitrating any dispute as called for by the parties' contract, Mammoth sued JT Jefferson. JT Jefferson claimed to have incurred in excess of $184,000 in attorneys' fees and costs to respond to Mammoth's allegedly improper lawsuit.

Claim Six was entitled "Declaratory Relief and Release of $225,000." In this Claim JT Jefferson sought a declaration that it did not owe Mammoth any portion of the $178,205 to Mammoth and was entitled to a release of $225,000 that had been placed into a trust account on account of this dispute.

## 2.   Arbitrator's Rulings on JT Jefferson's Claims

The Arbitrator's findings with respect to JT Jefferson's individual claims are discussed below.

**M⅄I**

McCORMICK
BARSTOW LLP
ATTORNEYS AT LAW

Timothy G. McFarlin, Esq.
January 21, 2009
Page 4

Claim One - Defective Construction of Storefront System. According to the Final Award, Mammoth admitted liability on this Claim and the only issue was the amount of damages incurred. It appears that JT Jefferson was attempting to claim damages of approximately $350,000 for a "curtain wall system" as opposed to a "storefront system" that was called for in the construction contract. The Arbitrator recognized this and accepted Mammoth's lower number of $230,000 as reasonable damages for the defective storefront construction.

Claim Two - Lost Discount with Arrowhead Timber Structures. This claim was allowed in its full amount of $29,745.

Claim Three - Bad Soil Compaction/Water Leaks/Underground Faults. This claim was denied.

Claim Four - Miscellaneous Additional Defect Claims. The only claim in this list that was not denied or withdrawn was the mis-location of under-slab waste lines. The total amount allowed under this Claim was $19,825.00.

Claim Five -- Failure to Follow Required Payment and Dispute Resolution Procedure. This claim was denied.

Claim Six -- Declaratory Relief and Release of Funds. Because the Arbitrator determined that no funds would be flowing to Mammoth, the $225,000 held in trust was released.

### C.    Mammoth's Claim against Gudgers

The Final Award also discussed Mammoth's claims against Gudgers. The Arbitrator first commented on the fact that Mammoth had not sued Gudgers on either a "straight" breach of contract theory nor on a negligence theory. With respect to the breach of contract, the Arbitrator commented that such a claim would have been "fruitless:"

> Mammoth's scheduling, lack of supervision, mis-location of the mid-span beam, failure to make the site available to Gudgers for corrective, completion or warranty work, etc. provide Gudgers with defenses of impossibility, waiver, estoppel, prevention, and the like…. Mammoth's conduct essentially excused Gudgers from further performance in terms of making a proper attachment to a horizontal mid-span beam. It paid Gudgers and sent him home, knowing that the job was incomplete.

In denying Mammoth's recovery on its claims against Gudgers, the Arbitrator commented similarly. Specifically, the Final Award states as follows:

> Mammoth didn't care much about the design, didn't care much about supervising the installation of the mid-span beam, didn't care much to

**McCORMICK
BARSTOW LLP**
ATTORNEYS AT LAW

Timothy G. McFarlin, Esq.
January 21, 2009
Page 5

supervise Gudgers' work, didn't care much about correcting the problem that Gudgers pointed out, and didn't care much about making the site available for Gudgers to correct or complete his work. It then paid Gudgers in full and said, "goodbye." After forsaking every possible opportunity to prevent, detect, and/or remedy exactly the kind of problem it faces, Mammoth now complains that Mammoth was abused by Gudgers. Yet it was Mammoth that permitted, tolerated, turned a blind eye towards, went along with, or deliberately did nothing about everything of which it now complains.

## II.    THE POLICY

The subject policy is a Commercial General Liability Policy issued by Liberty Surplus Insurance Corporation to Mammoth Equities Construction Group, Inc. under policy number is DGL-SF-079536-025 (the "Policy"). The policy period of March 4, 2006 to March 4, 2007. The Policy provides, in relevant part, as follows:

**SECTION I-COVERAGES COVERAGE A. BODILY INJURY AND PROPERTY DAMAGE LIABILITY**

1.    **Insuring Agreement**

a.    We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result. But:

...

b.    This insurance applies to "bodily injury" and "property damage" only if:

(1)    The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory"; and

(2)    The "bodily injury" or "property damage" occurs during the policy period.

...

Timothy G. McFarlin, Esq.
January 21, 2009
Page 6

**2.**   **Exclusions**

This insurance does not apply to:

**a.**   **Expected or Intended Injury**

"Bodily injury" or "property damage" for which the insured is obligated to pay damages by reason of the assumption of liability in contract or agreement. This exclusion does not apply to "bodily injury" resulting from the use of reasonable force to protect persons or property.

. . .

**m.**   **Damage to Impaired Property or Property Not Physically Injured**

"Property damage" to "impaired property" or property that has not been physically injured, arising out of:

**(1)**   A defect, deficiency, inadequacy or dangerous condition in "your product" or "your work"; or

**(2)**   A delay or failure by you or anyone acting on your behalf to perform a contract of agreement in accordance with its terms.

This exclusion does not apply to the loss of use of other property arising out of sudden and accidental physical injury to "your product" or "your work" after is has been put to its intended use.

. . .

\*   \*   \*

**SUPPLEMENTARY PAYMENTS -- COVERAGES A AND B**

**1.**   We, with respect to any claim we investigate or settle, or any "suit" against an insured we defend:

. . .

**e.**   All costs taxed against the insured in the "suit."

\*   \*   \*

**SECTION V-DEFINITIONS**

. . .

McCORMICK
BARSTOW LLP
ATTORNEYS AT LAW

Timothy G. McFarlin, Esq.
January 21, 2009
Page 7

13.    "Occurrence" means an accident, including continuous or repeated exposure to substantially the same  general harmful conditions.

...

17.    "Property damage" means:

   a.    Physical injury to tangible property, including all resulting loss of use of that property.  All such loss of use shall be deemed to occur at the time of the physical injury that cause it; or

   b.    Loss of use of tangible property that is not physically injured.  All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.

## III.    COVERAGE POSITION

### A.    Damage Awards

In order for indemnity coverage to potentially apply under Coverage A of the Policy, the insured must have been found liable for, applicable here, "property damage" taking place during the policy period and caused by an "occurrence."[1]

the Final Award did not award damages for "property damage." Further, to the extent that the damages awarded could be deemed "property damage," such damages were not caused by an "occurrence." Finally, to the extent that the definitions of "property damage" and "occurrence" could be said to have been satisfied, exclusion "m" applicable to Coverage A would bar coverage in this case.  Thus, LSIC must respectfully disclaim coverage for the damages awarded by the Arbitrator in favor of JT Jefferson and against Mammoth.

The Policy defines "property damage" as either (1) physical injury to tangible property; (2) of the loss of use of tangible property that is not physically injured. California courts have on several occasions repeated the axioms that liability policies "are not designed to provide contractors and developers with coverage against claim their work is inferior or defective" and that "[t]he risk of replacing and repairing defective materials or poor workmanship has generally been considered a commercial risk which is not passed on to the liability insurer. *Maryland Case Co. v. Reeder*, 270 Cal. Rptr. 719 (Cal. App. 1990).  In short, a liability insurance policy is not designed to serve as a performance bond. *Western Employers Ins. Co. v. Aricero & Sons, Inc.*, 194 Cal. Rptr. 688 (Cal. App. 1983).

---

[1]    The Final Award of the Arbitrator awards no damages for "bodily injury."  Further, Coverage B of the Policy does not apply as no damages for "personal and advertising injury" were alleged or awarded.  To the extent you or your client disagrees with these positions, please so kindly advise.

Timothy G. McFarlin, Esq.
January 21, 2009
Page 8

The application of these general principles to analogous facts is demonstrated in several cases. For example, in *F&H Construction v. ITT Hartford Ins. Co. of the Midwest*, 12 Cal. Rptr. 3d 896 (Cal. App. 2004), the costs of modifying improperly formulated pile caps and the contractor's lost bonus for early completion of the project were held not to constitute covered "property damage." Rather, the court held that the costs of modification were uncovered "intangible economic damages." 12 Cal. Rptr. at 903; *citing Waller v Truck Ins. Exchange, Inc.*, 900 P.2d 619 (Cal. 1995); *see also Stein-Brief Group, Inc. v. Home Indemnity Co.*, 76 Cal. Rptr. 2d 3 (Cal. App. 1998) (increased costs of home construction involved purely economic damages and did not constitute damage or injury to tangible property within property damage coverage); *Gardner Const. Co. v. Assurance Co. of America*, 2000 WL 1677959 (N.D. Cal. 2000)("introduction of a defective product into another product does not necessarily result in property damage"); *New Hampshire Ins. Co. v. Viera*, 930 F. 2d 696 (9th Cir. 1991) ("[d]iminution in value and cost of repair are not two separate harms-they are two different ways of measuring the same harm.... If the harm - [the insured's] defective work - is not covered as measured by diminished value, it is not covered as measured by cost of repair").

In this case, the Arbitrator awarded JT Jefferson three separate amounts as damages. One of these awards was the amount of $29,745 in connection with JT Jefferson's "Lost Discount with Arrowhead Timber Structures." This amount could not be covered under California law as it constitutes a pure economic loss and not "property damage" within the meaning of the policy.

The other two amounts awarded were: (1) the amount of $230,000 for "Defective Construction of Storefront System"; and (2) $19,825 for "Mis-location of under-slab waste lines." In this case, there was no discussion in JT Jefferson's claims nor in the Arbitrator's Award of any physical damage to the buildings or loss of use. In fact, the file materials show inspection reports where the inspectors commented that they were surprised that the buildings had not suffered wind damage. Just like the improper pile caps in *F&H Construction* or the use of improper nails on a roof, in this case Mammoth did not build a storefront that was sufficiently strong to withstand the elements. Similarly, Mammoth failed to locates waste lines properly in the building restrooms. Thus, the $230,000 for "Defective Construction of Storefront System" and the $19,825 for "Mis-location of under-slab waste lines" awarded to JT Jefferson do not constitute covered "property damage" under California law.

Even if the damage awards could be said to have consisted covered "property damage," they were not caused by an "occurrence." Courts applying California law consistently hold that an "occurrence" which is defined an as "accident" takes place where "the property damage is an unexpected or unintended consequence of the insured conduct." *Anthem Electronics, Inc. v. Pacific Employers Ins. Co.*, 302 F.3d 1049 (9th Cir. 2002) (citations omitted). Based upon this and other case law, the court in *Anthem Electronics* commented that "California courts construing similar CGL policies have found coverage where the insured was negligent, and in particular where the insured had installed or supplied defective products, so long as the insured

**McCORMICK
BARSTOW LLP**
ATTORNEYS AT LAW

did not know it was doing so." *Id.* at 1055 (citations omitted). Based upon these principles, the court found that, where circuit boards supplied by the insured "expectedly failed" an "occurrence had taken place." *Id.*; *see also Ray v. Valley Forge Ins. Co.*, 92 Cal. Rptr. 2d 473 (Cal. App. 2000) (no "occurrence" where the insured contractor had "intended" the building owner to use inappropriate building materials and "deliberately intended to include reliance on his recommendations").

In this case, the Final Award states that, even though Gudgers wanted to come back in and repair its glazing work, Mammoth made it impossible for Gudgers to do so. According to the Final Award, Mammoth knew that the storefront systems were not what was called for in the contract, but elected to leave them in their defective state in the hope that "no one would notice." These comments bring this case within the purview of *Anthem Electronics* and similar cases. Based upon the Arbitrator's comments, one can only conclude that Mammoth "intended" that the storefront systems remain in their defective state and, further, intended to deliver the buildings with these defects in place. Just as the consultant in *Ray* intended that the claimant rely upon his recommendations, so did Mammoth intend that JT Jefferson rely upon Mammoth's representations with respect to the soundness of the buildings. Thus, to the extent that the Final Award could be said to have awarded damages for covered "property damage," no "occurrence" has taken place.

We further call your attention to exclusion "m" applicable to Coverage A under the Policy. This exclusion bars coverage for, applicable here, "property damage" to property not physically injured arising out a delay or failure by Mammoth or anyone acting on Mammoth's behalf to perform a contract of agreement in accordance with its terms. As will be discussed in full below, this exclusion provides an additional basis to conclude that there is no coverage for the damages awarded in favor of JT Jefferson.

In *DCB Construction Co., Inc. v. Travelers Indem. Co. of Illinois*, 225 F. Supp. 2d 1230 (D. Colo. 2002), the court held that the "property not physically injured" exclusion applied to costs of the insured contractor's having to tear down and replace walls of completed hotels where the walls did not meet the contract's sound transmission specifications. According to the court, the walls could not be said to be "physically injured" by continuous exposure to sound. *Id.* at 1233. Also noteworthy is the case of *Dorchester Mut. Fire Ins. Co. v. First Kostas Corp., Inc.*, 731 N.E.2d 569 (Mass. App. 2000), wherein the court held that the "property not physically injured" exclusion applied to claims for remediation costs of a home following the insured contractor's negligently contaminating the home with lead chips and dust from old paint scrapped off of it.

The *DCB Construction* case provides a strong precedent for the application of the "property not physically injured" prong of exclusion "m" to the facts of this case. Just the hotel walls in *DCB Construction* had to be torn down and replaced because they did not meet contract specifications, in this case the storefront systems and the restroom waste lines had to be disassembled and replaced. Thus, to the extent that

**McCORMICK
BARSTOW LLP**
ATTORNEYS AT LAW

coverage could otherwise apply, the exclusion "m" applicable to Coverage A of the Policy would bar coverage.

**B.    Costs and Attorneys' Fees**

As mentioned above, the Supplementary Payments provision of the Policy states that LSIC will pay, with respect to any claim LSIC defends, all costs taxed against the insured.  Because California law holds that an insurer's duty to pay costs under a supplementary payments provision is a function of its defense obligation, not its indemnity obligation [*see Prichard v. Liberty Mut. Ins. Co.*, 101 Cal. Rptr. 2d 298 (Cal. App. 2000)], LSIC hereby agrees to pay on behalf of Mammoth (or reimburse Mammoth) the amount of $129,619.57 (representing the amounts of attorneys' fees and costs awarded in favor of JT Jefferson and Gudgers in the Final Award.)

**IV.    CONCLUSION**

Based upon the information known to date and for the reasons set forth above, LSIC respectfully disclaims coverage for the damages awarded in the Final Award, but agrees to pay on Mammoth's behalf the $129,619.57 in attorneys' fees and costs included in the Final Award.  This agreement to pay is subject to the requirements of the Bankruptcy Code and all orders entered by the Bankruptcy Court.

Nothing contained herein, nor any action or inaction on the part of LSIC, or any agent or representative of LSIC, should be construed as a waiver of any of LSIC's rights, all of which are expressly reserved.  LSIC specifically reserves the right to assert additional grounds to support the coverage determination, and reserves the right to re-examine coverage as new information is made available.  However, to the extent that you and/or your clients believe there is documentation or information that you contend LSIC should consider in connection with your claim for coverage under the terms of the LSIC policy, kindly forward the information to my attention.

If Mammoth contends that LSIC improperly declined coverage, Mammoth may have the matter reviewed by the California Department of Insurance, which may be contacted as follows:

California Department of Insurance
300 S. Spring Street
South Tower Los Angeles, CA 90013
Telephone: 1-800-927-7357

Should you wish to discuss this matter further, please do not hesitate to call.

**McCORMICK**
**BARSTOW LLP**
ATTORNEYS AT LAW

Timothy G. McFarlin, Esq.
January 21, 2009
Page 11

Sincerely,

Patrick Fredette
McCormick Barstow LLP

PF:pb

cc:    Jeffrey I. Golden, Bankruptcy Trustee
       Weiland, Golden, Smiley, Wang, Ekvall & Strock, LLP
       650 Town Center Drive, Suite 950
       P.O. Box 2470
       Costa Mesa, California  92628-2470

## *Via E-mail and U.S. Mail*

52485/00029-1487249.v1

# **PROOF OF SERVICE BY MAIL**

I, TALIEN BARSAMIAN, declare:

I am a citizen of the United Sates and a resident of the county of Orange and over the age of eighteen (18) years, and not a party to the action; my business mailing address is 4 PARK PLAZA STE 1025, IRVINE, CA 92614. I served the SUPPLEMENTAL DECLARATION OF TIMOTHY G. MCFARLIN IN SUPPORT OF DEBTOR'S MOTION TO COMPEL TRUSTEE TO ABANDON PROPERTY, by placing a true and correct copy in a sealed envelope with postage thereon fully prepaid, in the United States mail, at Irvine, Orange County, California, addressed as follows:

Service List Continued on to next page

I, TALIEN BARSAMIAN, declare under penalty of perjury, under the laws of the State of California and United States of America, that the foregoing is true and correct.

Executed on 07-01-2010, at Irvine, Orange County, California.

Dated: 07-01-2010

Talien Barsamian
Declarant

**Service List**

US Trustee
411 W 4th Street, Ste 9041
Santa Ana, CA 92701

Chapter 7 Trustee
Jeffrey I Golden
650 Town Center Drive, Ste 950
Costa Mesa, CA 92626

Honorable Judge Robert N. Kwan
411 W 4th Street, Ste 5165
Santa Ana, CA 92701-4593

Mammoth Equities Construction Group, Inc.
29222 Rancho Viejo Road, Ste 206
San Juan Capistrano, CA 92675

Timothy G. McFarlin
McFarlin & Geurts, LLP
4 Park Plaza, Ste 1025
Irvine, CA 92614

Archer Norris
333 S Grand Ave Ste 3680
Los Angeles, CA 90071-1540

Buxcon Sheet Metal, Inc.
11222 Woodside Ave N
Santee, CA 92071

DG Ricketts Pipeline Contracto
41542 Grandview Drive
Murrieta, CA 92562

Fredrickson, Mazeika & Grant
5720 Oberlin Drive
San Diego, CA 92121

Glenn M. Gelman & Assoc.
1940 E 17th Street
Santa Ana, CA 92705-8606

Gudgers Glass, Inc
29766 Hazel Glen Road
Murrieta, CA 92563

Jacob L Bercovitz
5034 Bluff Place
El Cajon, CA 92020

JT Jefferson, LLC
5034 Bluff Place
El Cajon, CA 92020

LAW OFFICES OF TIMOTHY G. MCFARLIN
A Professional Law Corporation

1

2    Sparber Rudolph Annen, APLC
     701 B Street, Ste 1000
3    San Diego, CA 92101-8109

4    Timothy H. Hoag
     5034 Bluff Place
5    El Cajon, CA 92020

6    Trachtman & Trachtman
     2701 Los Altos, Ste 300
     Mission Viejo, CA 92691
7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

LAW OFFICES OF TIMOTHY G. MCFARLIN
A Professional Law Corporation

PROOF OF SERVICE